# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
Assigned on Briefs August 3, 2010

## STATE OF TENNESSEE v. DEREDIOUS OTIS

**Direct Appeal from the Criminal Court for Shelby County**
**No. 08-03503     Chris Craft, Judge**

---

**No. W2009-02187-CCA-R3-CD  - Filed December 7, 2010**

---

The defendant, Deredious Otis, stands convicted of aggravated assault, a Class C felony. The trial court sentenced him as a Range I, standard offender to four and a half years in the workhouse. On appeal, the defendant presents seven issues for our review: (1) whether the trial court erred in denying the defendant's motion for judgment of acquittal; (2) whether the trial court erred by not allowing the defendant to enter his own statement to police as evidence; (3) whether the trial court erred by refusing to instruct the jury on the affirmative defenses of self-defense and defense of a third party; (4) whether the trial court erred by restricting defense counsel's cross-examination; (5) whether the trial court erred by threatening defense counsel with contempt; (6) whether the trial court committed a *Batson* error in the composition of the final jury; and (7) whether the trial court improperly applied sentencing factors. Finding no reversible error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J.C. MCLIN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and JOHN EVERETT WILLIAMS, JJ., joined.

Gerald S. Green (on appeal) and Andre Wharton (at trial), Memphis, Tennessee, for the appellant, Deredious Otis.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; William L. Gibbons, District Attorney General; and Greg Gilbert, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Background

This case concerns the February 16, 2008, shooting of the victim, Darron Mosley, during an alleged robbery. On May 29, 2008, a Shelby County grand jury indicted the defendant, Deredious Otis, for the especially aggravated robbery of the victim, a Class A felony. The matter proceeded to trial in June 2009, and the parties presented the following evidence.

Porchia Banks testified that on February 16, 2008, she was spending the night at her sister's house near the intersection of Crump Boulevard and Latham Street in Memphis, Tennessee. She said that she went to bed just after midnight, but she could not go to sleep because of a commotion outside. She looked out her window and saw three men, who appeared to be arguing, standing in between two cars in the parking lot adjacent to an apartment complex. She watched them for a few minutes and went back to bed. Approximately five minutes later, she heard gunshots. She looked out her window again and saw two men standing over a man on the ground. Ms. Banks testified that "they were fumbling . . . with him[,] . . . [a]nd then they walked off." She went outside to check on the victim, whom she later learned was Darron Mosley. Ms. Banks said that she did not see any weapon at that point, nor did she see any weapons earlier when she observed the three men. She asked the victim how he was and observed that he had been shot in the leg. He said that he was okay and would drive himself to the emergency room, but she volunteered to drive him. Before they left the parking lot, a black female, approximately eighteen or nineteen years old, came outside and spoke with the victim, but he did not respond to her. Ms. Banks testified that she was unable to see the faces of the men she had observed with the victim, but she saw that they were both wearing dark-colored hoodies. Ms. Banks said that she called 911, but the victim did not want to wait for the ambulance, so she drove the victim to the Regional Medical Center. She flagged down a police officer on the way, who followed them to the hospital. After she and the officer helped the victim into the emergency room, she went to 201 Poplar Avenue to give her statement to police.

On cross-examination, Ms. Banks admitted that she exchanged cell phone numbers with the victim and that they sent text messages to each other a few times. She recalled that she sent him a text message while she was giving her statement to police asking whether the female who spoke with him was his girlfriend. Ms. Banks said that the last time they had communicated was the summer before the trial and that she no longer had the victim's phone number.

Darron Mosley testified that on February 15, 2008, he made plans with a woman named Kierra Tunstall[1] to pick her up from a party. He said that Ms. Tunstall was a cousin of one of his cousins. He picked Ms. Tunstall and her child up from the party between 10:30 p.m. and 11:00 p.m. and took them to her apartment, which was in a complex near Crump Boulevard and Latham Street. They stopped at a gas station on the way, and it was near midnight when they arrived at her apartment. Ms. Tunstall and her child went into their apartment while Mr. Mosley waited outside for Ms. Tunstall to return. After five to ten minutes, he called her, but she did not come out right away. He left because he did not want to wait for her any longer. As he was leaving, he saw two black teenage males flagging him down, but he did not stop for them. Mr. Mosley testified that Ms. Tunstall called him after he had driven for two to three minutes and asked him to come back. He returned to the apartment complex, parked, and called her to let her know he was outside. Ms. Tunstall came outside and got into his car. He had to move over to the passenger side so that she could enter from the driver's side because the passenger side door did not work. Mr. Mosley said that two men approached his car at that point. He said that they looked like the men who had flagged him down earlier based on their skin tone. Mr. Mosley testified that one of the men pointed a gun at him, and the other man followed. The gunman told him to get out of the car and demanded money. Mr. Mosley identified the defendant as the gunman. Mr. Mosley said that one of the men grabbed Ms. Tunstall and told her to get out of the car. When Ms. Tunstall was out of the car, Mr. Mosley climbed over to the driver's side and got out. He testified that as soon as he put a foot on the ground, the defendant fired three shots. Two bullets hit Mr. Mosley, one in the right knee and another in the left shin. He fell to the ground, and one of the men removed his money from one of his pockets. Mr. Mosley said that he had just been paid that day and had between $250 and $300. He did not know which man took his money nor did he know where Ms. Tunstall had gone. He saw the men run away, and Ms. Banks came to him, asking whether he was okay. She took him to the Regional Medical Center, where he stayed for four days and had surgery on his right knee.

Officer Michael Coburn, a patrol officer with the Memphis Police Department, testified that he responded to a shooting at 946 Gathers Park Lane, near the intersection of Crump Boulevard and Latham Street. He said that the victim was not present at the scene when he arrived. Officer Coburn located two shell casings and a bullet fragment in an empty parking space. He secured the scene until a crime scene investigator arrived.

*Defense Proof.* Sergeant Roderick Robinson, of the Memphis Police Department, testified that he was the case officer who supervised the investigation in this case. He said

---

[1] Mr. Mosley referred to Ms. Tunstall as "Kierra" throughout his testimony. However, Sergeant Robinson later testified that her surname was Tunstall.

that he interviewed the victim and Ms. Tunstall. The victim told him that he left parking lot and returned. The victim also told him that he had picked Ms. Tunstall up from a party.

Following the close of proof and deliberations, the jury found the defendant guilty of the lesser included offense of aggravated assault, a Class C felony. The trial court sentenced him as a Range I, standard offender to four and a half years in the workhouse.

**Analysis**

The defendant presents seven issues for our review: (1) whether the trial court erred in denying the defendant's motion for judgment of acquittal; (2) whether the trial court erred by not allowing the defendant to enter his own statement to police as evidence; (3) whether the trial court erred by refusing to instruct the jury on the affirmative defenses of self-defense and defense of a third party; (4) whether the trial court erred by restricting defense counsel's cross-examination; (5) whether the trial court erred by threatening defense counsel with contempt; (6) whether the trial court committed a *Batson* error in the composition of the final jury; and (7) whether the trial court improperly applied sentencing factors.

Initially, we note that in his brief, the defendant failed to make any reference to the record. Generally, such failure results in waiver of the issue. Tenn. Ct. Crim. App. R. 10(b); *State v. Schaller*, 975 S.W.2d 313, 318 (Tenn. Crim. App. 1997); *State v. Turner*, 919 S.W.2d 346, 358 (Tenn. Crim. App. 1995); *see also* Tenn. R. App. P. 27(a)(7) and (g). However, we will review the defendant's first issue - denial of his motion for judgment of acquittal - and his last issue - improper application of sentencing factors.

*Motion for Judgment of Acquittal*

The defendant asserts that the trial court erred by denying the defendant's motion for judgment of acquittal at the close of the state's proof because the state did not present proof beyond a reasonable doubt as to the indicted offense of especially aggravated robbery.

The defendant presented proof in his defense at trial and thereby waived his motion for acquittal at the conclusion of the state's proof. "[A] defendant waives his or her right to appeal from a trial court's refusal to grant a motion for judgment of acquittal if the defendant continues to participate in the trial after the close of the [s]tate's proof." *Finch v. State*, 226 S.W.3d 307, 316 (Tenn. 2007)(citing *Mathis v. State*, 590 S.W.2d 449, 453 (Tenn. 1979)). To preserve the record for appellate review at the point he made the motion, "the defendant must stand upon his motion, and rest his case without offering proof." *State v. Thompson*, 549 S.W.2d 943, 945 (Tenn. 1977). If the defendant offers evidence and does not stand upon his motion, then the defendant must renew the motion at the end of all of the proof to have the issue considered on appeal. *See id.* If the defendant renews the motion, the trial and

appellate courts will determine whether the motion should be granted based on a review of the entire record. *See id.*

At the close of the state's proof, the defendant made a motion for judgment of acquittal, which the trial court denied. After the trial court's denial, the defendant continued to participate in the trial by calling witnesses. The defendant did not stand on his motion for judgment of acquittal nor did he renew his motion at the close of all the proof. Therefore, we conclude that the defendant has waived his motion for judgment of acquittal.

However, the state has addressed the defendant's argument as challenging the sufficiency of the convicting evidence. Because "[t]he standard by which the trial court determines a motion for judgment of acquittal at the end of all the proof is, in essence, the same standard which applies on appeal in determining the sufficiency of the evidence after a conviction," *State v. Thompson*, 88 S.W.3d 611, 614-15 (Tenn. Crim. App. 2000), we will review the defendant's claim as a sufficiency of the evidence challenge. Our review begins with the well-established rule that once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). Therefore, on appeal, the convicted defendant has the burden of demonstrating to this court why the evidence will not support the jury's verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000); *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). To meet this burden, the defendant must establish that no "rational trier of fact" could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Evans*, 108 S.W.3d 231, 236 (Tenn. 2003); Tenn. R. App. P. 13(e). In contrast, the jury's verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). The state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. *Carruthers*, 35 S.W.3d at 558; *Tuggle*, 639 S.W.2d at 914. Questions concerning the credibility of the witnesses, conflicts in trial testimony, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). We do not attempt to re-weigh or re-evaluate the evidence. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002); *Bland*, 958 S.W.2d at 659. Likewise, we do not replace the jury's inferences drawn from the circumstantial evidence with our own inferences. *See State v. Elkins*, 102 S.W.3d 581, 582 (Tenn. 2003); *Reid*, 91 S.W.3d at 277.

The grand jury indicted the defendant for especially aggravated robbery; however, the trial jury convicted the defendant of the lesser-included offense of aggravated assault. Aggravated assault is the intentional, knowing, or reckless commission of an assault that causes serious bodily injury or is accomplished through the use or display of a deadly

weapon. Tenn. Code Ann. § 39-13-102. Assault, as relative to this case, is intentionally, knowingly, or recklessly causing bodily injury to another. *Id.* § 39-13-101(a)(1). "'Serious bodily injury' means bodily injury which involves: (A) A substantial risk of death; (B) Protracted unconsciousness; (C) Extreme physical pain; (D) Protracted or obvious disfigurement; [or] (E) Protracted loss or substantial impairment of a function of a bodily member, organ or mental faculty . . . ." *Id*. § 39-11-106(a)(34). "Deadly weapon" means "[a] firearm or anything manifestly designed, made or adapted for the purpose of inflicting death or serious bodily injury . . . ." *Id.* § 39-11-106(a)(5).

The victim testified that a gunman shot him in his right knee and left shin, and he identified the defendant as the gunman. Whether the victim's injuries suffice to meet the definition of "serious bodily injury," the defendant accomplished the assault with a deadly weapon, to wit, a firearm. Therefore, the evidence was sufficient for any rational jury to find the defendant guilty of aggravated assault.

*Sentencing*

The defendant appears to argue that the trial court applied inappropriate enhancement factors because the factors were not found by a jury or admitted by the defendant, thus violating *Blakely v. Washington*, 542 U.S. 296 (2004). While the defendant did not adequately reference the record and has waived any other argument regarding his sentence, we will address his specific argument.

In *Blakely v. Washington*, the United States Supreme Court held that the Sixth Amendment right to a jury trial requires that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Blakely*, 542 U.S. at 301 (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)). The court emphasized that "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." *Id.* 303-04. The court further noted that the Sixth Amendment right to a jury trial is "no mere procedural formality, but a fundamental reservation of power in our constitutional structure." *Id.* at 305-06.

Thereafter, in *Cunningham v. California*, 549 U.S. 270 (2007), the United States Supreme Court extended the *Blakely* analysis to California's determinate sentencing scheme. In doing so, the court noted:

> We cautioned in *Blakely*, however, that broad discretion to decide what facts
> may support an enhanced sentence, or to determine whether an enhanced
> sentence is warranted in any particular case, does not shield a sentencing

system from the force of our decisions. If the jury's verdict alone does not authorize the sentence, if, instead, the judge must find an additional fact to impose the longer term, the Sixth Amendment requirement is not satisfied.

*Cunningham*, 549 U.S. at 290 (citing *Blakely*, 542 U.S. at 305 and n. 8)

"In order to avoid the constitutional violation arising from a trial court increasing a presumptive sentence on the basis of judicially-determined enhancement factors," the Tennessee General Assembly amended Tennessee Code Annotated sections 40-35-102, -210, and -401, effective June 7, 2005, to reflect the advisory nature of enhancement factors. *State v. Carter*, 254 S.W.3d 335, 343 (Tenn. 2008). The amendment, among other things, removed the presumptive sentence language from our Sentencing Act and mandated only that the trial "court shall impose a sentence within the range of punishment . . . ." *Compare* Tenn. Code. Ann. § 40-35-210(c) (Supp. 2005) *with* Tenn. Code Ann. § 40-35-210(c) (2003). The General Assembly also provided that this amendment would apply to defendants who committed a criminal offense on or after June 7, 2005. *See* 2005 Tenn. Pub. Act ch. 353, § 18.

The defendant in this case committed the offense after the effective date of the 2005 amendments to the Sentencing Act. Therefore, his contention that the trial court erred by applying sentencing factors that a jury had not found beyond a reasonable doubt or that the defendant had not admitted is without merit because the General Assembly amended the Sentencing Act, rendering the enhancement factors advisory, in order to avoid a constitutional violation under *Blakely*. The defendant is without relief on this issue.

## Conclusion

Based on the foregoing reasons, we affirm the judgment of the trial court.

_____

J.C. McLIN, JUDGE