# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### July 12, 2011 Session

## STATE OF TENNESSEE v. MAURICE SHAW, SR.

**Direct Appeal from the Circuit Court for Tipton County**
**No. 6551     Joseph H. Walker, Judge**

---

**No. W2010-02529-CCA-R3-CD  - Filed March 16, 2012**

---

A jury in Tipton County found Defendant, Maurice Shaw, Sr., guilty of delivery of 0.5 grams or more of cocaine, a Class B felony.  The trial court sentenced Defendant to fifteen years as a Range II offender.  Defendant appeals, contending that the evidence was insufficient to sustain the conviction and that he is entitled to a new trial because "the evidence was so tainted by improper actions and testimony of the drug task force officer and confidential informant."  After review of the record and the briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, PJ., and NORMA MCGEE OGLE, J., joined.

J. Thomas Caldwell, Ripley, Tennessee, for the appellant, Maurice Shaw, Sr.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; D. Michael Dunavant, District Attorney General; James Walter Freeland, Jr., Assistant District Attorney General; and Billy G. Burk, Assistant District Attorney General, for the appellee, the State of Tennessee.

## OPINION

We will first review the facts developed during the State's case-in-chief.  On March 28, 2009, Kelly Watson, who was working as a "confidential source" for the 25th Judicial District Drug Task Force ("DTF"), talked with Defendant via telephone to arrange a purchase of cocaine from Defendant.  Arrangements were made for Mr. Watson to meet Defendant outside a Dollar General store on Highway 14 in Tipton County.  Investigator Randall

Robins, of the Atoka, Tennessee police department, who was assigned to the DTF, had the responsibility of "controlling" or overseeing Mr. Watson in his capacity as a confidential source. Prior to Mr. Watson going to meet Defendant, Investigator Robbins searched Mr. Watson and Mr. Watson's car to make sure no illegal drugs were present. He also connected an audio/video recording device to Mr. Watson, which included a recording camera disguised as a button on Mr. Watson's shirt. Investigator Robbins gave Mr. Watson $150.00 in cash, the prearranged price, for the purchase of the cocaine.

Investigator Robbins followed Mr. Watson when he drove to the Dollar General store, but parked across the highway over 100 yards away when Mr. Watson pulled up and parked beside the store. Mr. Watson remained in his vehicle while he awaited Defendant's arrival. In a few minutes, Defendant arrived at the scene driving a white Ford Taurus automobile. There were two passengers with Defendant, an African-American female in the front seat and a white female in the passenger side of the back seat.

Defendant parked his vehicle in front of Mr. Watson's car, facing the same direction as Mr. Watson was facing. Mr. Watson got out of his vehicle, and a strong wind blew up his shirt and exposed the "wire" attached to him. He pushed down his shirt and got back into his vehicle where he remained throughout the transaction with Defendant. Defendant got out of his vehicle and walked to the driver's window of Mr. Watson's vehicle. The female passengers remained inside Defendant's vehicle. Mr. Watson and Defendant "exchanged a few words" and Mr. Watson gave the $150.00 in cash to Defendant and Defendant handed Mr. Watson the cocaine. Defendant went back to his vehicle and departed with his passengers. Mr. Watson drove back to the Atoka Police Department substation where he met again with Investigator Robbins and handed over the drugs and the audio/video recording equipment to Robbins.

The recorded telephone conversation between Defendant and Mr. Watson, in which the drug transaction was arranged, was made an exhibit and played for the jury. Likewise, the audio/video recording of the transaction was made an exhibit and played for the jury. There was abundant testimony that the drugs were properly labeled and sealed and delivered for testing to the Tennessee Bureau of Investigation ("TBI") crime laboratory, and were properly returned and held awaiting trial. A forensic scientist who tested the drugs testified that it was crack cocaine weighing 1.1 grams.

One conflict in the testimony that Defendant points out in his brief is the fact that Mr. Watson testified that the $150.00 in cash given to him by Investigator Robbins consisted of small bills, being $20.00 bills and maybe a $10.00 bill. Investigator Robbins testified that he was certain the $150.00 consisted of one $100.00 bill and one $50.00 bill.

Patricia Collins was called as a witness for Defendant and testified that she was a passenger in Defendant's vehicle when he drove to meet with Mr. Watson. Likewise, Gracie McMillan testified she was the other female passenger with Defendant on the date of the meeting. Both women testified that Defendant parked his vehicle in front of and facing toward the front of Mr. Watson's vehicle, where they could see everything that transpired. According to these witnesses, Mr. Watson had called Defendant for assistance because Watson's car "had stopped." They then went to the Dollar General store to "jump start" Mr. Watson's car. When they arrived Mr. Watson was outside of his vehicle looking under the raised hood. He walked to the Defendant's window and told them his car was fixed. Ms. McMillan asked Mr. Watson for gas money, and Mr. Watson tossed a $20.00 bill into the car. Both women testified that there was no conversation by Defendant about a drug transaction and that absolutely no drug transaction took place that day at the Dollar General store. Defendant did not testify and offered no further proof.

**Analysis**

In his attack upon the sufficiency of the evidence, Defendant primarily argues that the testimony of the confidential source, i.e., Mr. Watson, was outweighed by the testimony of Ms. Collins and Ms. McMillan.

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. *See State v. Carruthers*, 35 S.W.3d 516, 558 (Tenn. 2000); *State v. Hall*, 8 S.W.3d 593, 599 (Tenn. 1999). A guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory. *See State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence. *See State v. Evans*, 108 S.W.3d 231, 236 (Tenn. 2003); *Bland*, 958 S.W.2d at 659. Nor will this Court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact. *See Evans*, 108 S.W.3d at 236-37; *Carruthers*, 35 S.W.3d at 557.

Pursuant to Tennessee Code Annotated section 39-17-417, it is a criminal offense for a person to knowingly deliver a controlled substance. Tenn. Code Ann. § 39-17-417(a)(2). Clearly the evidence was sufficient to support Defendant's conviction under the standard set forth above. The jury believed the witnesses for the State and rejected the testimony of Defendant's witnesses. Defendant is not entitled to relief on this issue.

In his second issue, Defendant makes the rather novel argument that while "[t]his is not an entrapment case, for the defendant denies commission of an illegal act," nevertheless

"the fraud elements of entrapment are applicable to this case." Defendant cites *American Jurisprudence* in support of his assertion that the "objective test" regarding the entrapment defense should be applied by this Court to reverse his conviction.

There are several problems with Defendant's argument on this issue: (1) he acknowledges that the defense of entrapment is not available, but still requests relief because the "elements" of entrapment exist; (2) he fails to cite to the record where the "elements" of entrapment are shown other than a general reference that Mr. Watson's actions "amounted to a contrived effort . . . to manufacture a case;" and (3) an entrapment issue was raised for the first time on appeal.

It is basic logic that a defendant cannot deny the existence of a defense to a crime and at the same time assert that he is entitled to relief based upon the defense. Additionally, issues raised for the first time on appeal are generally waived. *State v. Johnson*, 970 S.W.2d 500, 508 (Tenn. Crim. App. 1996); *see* Tenn. R. App. P. 36.

Finally, the failure to make appropriate references to the record in the argument portion of the appellate brief and to cite relevant authority will generally constitute a waiver of the issue. *State v. Schaller*, 975 S.W.2d 313 (Tenn. Crim. App. 1997); Tennessee Court of Criminal Appeals Rule 10. Even if the "entrapment" defense had been properly preserved and presented on appeal, Tennessee has rejected the "objective test" asserted by Defendant. *See State v. Blackmon*, 78 S.W.3d 322 (Tenn. Crim. App. 2001); Tenn. Code Ann. § 39-11-505. Defendant is not entitled to relief on this issue.

## CONCLUSION

The judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE